## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CHICAGO REGIONAL COUNCIL OF CARPENTERS, et al., ) ) ) | |
| Plaintiffs, ) ) | No. 15 C 10163 |
| v. ) ) | Magistrate Judge Daniel G. Martin |
| WILLMAN CONSTRUCTION, INC., et al., ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' motion to dismiss for lack of jurisdiction and for improper venue or, in the alternative, to transfer venue to the United States District Court for the Southern District of Iowa [23]. For the reasons stated below, Defendants' motion to dismiss is denied as to Tri-State and denied without prejudice to renewal upon the lifting of the stay as to Willman.

## BACKGROUND

Defendants Willman Construction, Inc. ("Willman") and Tri-State Construction Services, Inc. ("Tri-State") are Iowa construction firms. On March 16, 1993, Willman signed a Memorandum of Agreement with Plaintiffs Chicago Regional Council of Carpenters and Carpenters Union Local 4 (collectively referred to as the "Union") through its predecessor Northwest Illinois & Eastern Iowa District Council of Carpenters, agreeing to be bound by the "Area Agreements negotiated between the Northwest Illinois & Eastern Iowa District Council of Carpenters and various Employer Associations." (Doc. 17-1). The Union negotiated an Area Agreement with the Employer Associations on May 18, 2013 (the "CBA"). (Docs. 17-2, 17-3). The CBA is effective from May 18, 2013 through April 30, 2016. (Docs. 17-2 at 2). Among other things, Willman agreed to pay wages and fringe benefits payments as set forth in the CBA. *Id.* at 9. Article XVI of the CBA specified that any disputes other than jurisdictional claims

regarding the meaning, interpretation, or violation of the agreement would be settled by arbitration. *Id.* at 17-18.

By letter dated July 22, 2015, the Union submitted a grievance to Willman alleging a violation of the CBA by failing to pay wages, deductions and/or fringe benefits and also for subcontracting. (Docs. 17-4 at 2). On August 5, 2015, the Union informed Willman of its intent to arbitrate the grievance and to select a member of the arbitration panel pursuant to Article XVI of the CBA. (Doc. 17-6 at 2). The Union asked Willman to select its member of the arbitration panel. *Id.* Willman has refused to select its arbitrator and thus, prevented the Union from submitting the grievance to arbitration. (Doc. 17-7 at 2).

The Union then brought this action against Willman to compel arbitration under the Labor Management Relations Act ("LMRA"). *See* 29 U.SC. 185. The parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to this Court on December 16, 2015. (Doc. 14). On February 3, 2016, before Willman answered or otherwise plead to the complaint, the Union filed an amended complaint to compel arbitration against Willman and Tri-State. (Doc. 17). Tri-State is not a signatory to the Memorandum of Agreement or the CBA. (Doc. 17 at 10, ¶¶ 32-33). There are five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). The Union alleges that assumption, agency, and veil piercing theories are applicable in this case. (Doc. 17 at 10-15).

Defendants filed a motion to dismiss for lack of jurisdiction and improper venue or, in the alternative, to transfer venue to the United States District Court for the Southern District of Iowa. (Doc. 23). This action was then stayed against Willman when it filed a Chapter 11 bankruptcy action in the Southern District of Iowa. (Docs. 27, 30). A briefing schedule was set on the motion to dismiss or to transfer venue, and counsel were directed to also address the issue of whether the bankruptcy stay as to Willman should be extended to Tri-State. (Docs. 34, 45).

**<u>DISCUSSION</u>**

**A.     Bankruptcy Stay**

The Court begins with the parties' dispute as to whether the bankruptcy stay should be extended to non-debtor Defendant Tri-State. The Union argues that the stay should not be extended to Tri-State and the case should proceed against Tri-State.  Tri-State argues that the action should be stayed as to it because "unusual circumstances" exist that justify the extension of the automatic stay to a non-debtor defendant.

Section 362 of the Bankruptcy Code forbids "commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title."  11 U.S.C. § 362(a)(1).  "Although this automatic stay provision prevents on-going litigation against a debtor, the general rule in this circuit is that plaintiffs are free to pursue the debtor's codefendants regardless of the automatic stay."  *Celtic Bank Corp. v. Executive Title, Inc.*, 2015 WL 5951844, at * (N.D. Ill. Oc. 13, 2015).  (internal quotation marks and citations omitted); *Pitts v. Unarco Indus., Inc.*, 698 F.2d 313, 314 (7th Cir. 1983) ("The clear language of Section 362(a)(1) … extends the automatic stay provision only to the debtor filing bankruptcy proceedings and not to non-bankrupt co-defendants."). The automatic stay provision was "intended to protect the assets of the debtor for the benefit of creditors," not to "afford collateral benefits to non-debtor parties involved in the litigation with the debtor as party defendants or as co-defendants."  *Lee v. RCN Corp.*, 2004 WL 2108577, at *1 (N.D. Ill. Sept. 20, 2004).

There are two exceptions in unusual circumstances where a court may stay proceedings against non-bankrupt co-defendants.  *Lee*, 2004 WL 2108577, at *1.  First, a suit may not proceed against non-debtor co-defendants where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the

3

debtor." *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991). "An Illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case." *A. H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). The second exception operates when "the pending litigation, though not brought against the debtor, would cause the debtor, the bankruptcy estate, or the reorganization plan 'irreparable harm.'" *In re Fernstrom Storage & Van Co.*, 938 F.2d at 736.

Tri-State argues that both exceptions apply here, but the Court disagrees. Tri-State asserts that the first exception applies because Willman and Tri-State are small family-owned and staffed businesses that work together to accomplish mutual goals. Tri-State claims that any judgment entered against Tri-State would directly and immediately affect Willman and its ability to reorganize. Tri-State points out that Willman is leasing equipment from Tri-State and if the equipment were levied upon to enforce a judgment, Willman's ability to operate and reorganize would be materially impaired. Finally, Tri-State argues that all resources ultimately emanate from Mr. and Mrs. Willman and any action affecting Tri-State would necessarily affect Willman.

The first exception applies "where there is sufficient identity between the debtor and nondebtor such that the litigation against the nondebtor threatens property of the estate." *In re Kmart Corp.*, 285 B.R. 679, 688 (N.D. Ill. 2002). Although the amended complaint alleges that Willman and Tri-State are not separate corporate entities and are operated as one in the same, a judgment in favor of the Union in this action to compel arbitration will not automatically threaten the property of the estate. In this case, the Union is not seeking a money judgment for the unpaid wages and benefits and the Union does not seek to recover property from Tri-State that may be property of the bankruptcy estate of Willman. Rather, the amended complaint seeks to compel Tri-State to proceed to arbitration on the Union's claim for unpaid wages and fringe benefits. The Court will not be ruling on the merits of the underlying claim for unpaid wages and benefits, and Tri-State's equipment will not be levied upon by a judgment in this

action.  If the Union is successful in piercing the corporate veil of Willman, then Tri-State will be bound by Willman's arbitration agreement.  A successful veil piercing claim in this case would have no impact on the bankruptcy estate, and judgment against Tri-State would have no impact on Willman's estate or resources.  There is also no claim that Tri-State is entitled to indemnification by Willman that would create an identity of interests.  Because the Union's veil-piercing claim against Tri-State will not involve or threaten property of the estate, the first exception does not apply and justify extending the automatic stay to Tri-State.

As to the second exception, Tri-State relies on cases which have recognized that a stay is appropriate where the continuation of proceedings against a non-debtor could cause irreparable harm to the debtor by diverting resources needed for its reorganization.  *In Re KMart Corp.*, 285 B.R. at 689 (stating "[a]nother exception is illustrated by cases where the debtor's key personnel are diverted from the reorganization by the demands of discovery related to the third-party suit."); *In re Continental Airlines*, 177 B.R 475, 481 (D. Del. 1993).  Tri-State makes the conclusory statement that the "demands of discovery in this litigation will no doubt be a tremendous drain on the time of both Mr. and Mrs. Willman in their corporate roles for both entities."  (Doc. 52 at 4).  Tri-State contends that "because of the close relationship of the two corporate defendants, irreparable harm could result to Willman when its resources could, and almost certainly would, be consumed in defense of Tri-State."  *Id.* at 5.  The Court understands Tri-State's personnel concerns, but Tri-State has provided no evidence to substantiate that it is unable to access resources necessary to defend this litigation.  Tri-State has presented no evidence supporting its contention that incurring costs to defend this case will cause irreparable harm to Willman.  There has also been no showing that discovery in this case will be voluminous or excessively costly.  Tri-State has further failed to identify any Willman reorganization activity that will be substantially undermined or hindered through the diversion of resources or staff time.

Even if Tri-State had made out a colorable claim under either exception for an extension of the automatic stay to a non-debtor defendant, the Court would decline to extend the automatic stay to Tri-State for an additional reason. "The weight of authority … holds that a request to extend a § 362 stay must be filed in the court where the bankruptcy action pends, and further, that the request is to be filed by the debtor." *Lee*, 2004 WL 2108577, at \*1. "The bankruptcy court is in the best position to evaluate the effect on the bankruptcy estate, if any, of litigation against a nondebtor co-defendant. And the request should be filed by the debtor because it is the debtor's interest, not those of the nondebtor co-defendants, that are intended to be protected by an extension of the stay." *Id.* The Court agrees that Willman should seek to protect its own interests in the bankruptcy court if it believes they are at risk. The bankruptcy court is in the best position to evaluate the stated concerns and determine whether the automatic stay should apply to Tri-State. Accordingly, the Court declines to extend the automatic stay to Tri-State on this further basis.

For these reasons, Tri-State's request for a stay is denied. The Court now turns to the merits of the motion to dismiss.

**B.    Tri-State's Motion to Dismiss[1]**

    **1.    Subject Matter Jurisdiction**

Tri-State moves to dismiss the amended complaint for lack of subject matter jurisdiction. A defendant may move to dismiss claims over which the federal court lacks subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). When ruling on a motion to dismiss for lack of subject matter jurisdiction, "the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Rueth v. U.S. E.P.A.*, 13 F.3d 227, 229 (7th Cir. 1993) (*quoting Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993)) (internal quotations omitted). "The district court may properly look

---

[1] Because this action is stayed as to Willman, the Court only addresses the motion to dismiss as it relates to Tri-State.

beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exits." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (*quoting Capitol Leasing Co.*, 999 F.2d at 191 (internal quotations omitted)).

The Union brings this action under Section 301 of the LMRA. Section 301 grants federal courts subject matter jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). The Union has alleged that this suit involves a collective bargaining agreement which Defendants have been accused of violating. Tri-State qualifies as an "employer" under the LMRA and the Union is a "labor organization representing employees in industry affecting commerce" as defined in Section 301 of the LMRA. The Union's allegations are sufficient to assert a claim under Section 301 of the LMRA, and application of the LMRA creates federal question jurisdiction in this court.

Tri-State contends that this action "is a simple breach of contract that happens to involve a labor agreement" and that the Union's breach of contract claim can be decided by applying Illinois law. (Docs. 23 at 2, 24 at 3). Tri-State fails to recognize that there is no state law breach of contract action between an employer and a union involving a violation of a collective bargaining agreement. It is well-established that "Section 301 of the Labor Management and Relations Act (LMRA) completely preempts state law claims based on violations of contracts between an employer and a labor organization if those claims require interpretation of the collective bargaining agreement." *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001). Based on the foregoing, the Court concludes that it has subject matter jurisdiction over the Union's LMRA claim.

### 2. Personal Jurisdiction

Tri-State also moves to dismiss the amended complaint on the ground that this Court lacks personal jurisdiction over it. Tri-State argues that it lacks sufficient minimum contacts with the State of Illinois which would prevent this Court from obtaining personal jurisdiction over it. Federal Rule of Civil Procedure 12(b)(2) governs dismissals based on lack of personal jurisdiction. The Union has the burden of establishing personal jurisdiction. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). "[W]here, as here, the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* At this stage, all well-pleaded facts alleged in the amended complaint are taken as true and any factual disputes in affidavits are resolved in favor of the Union. *Id.*

Where no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state. Fed. R. Civ. P. 4(k)(1)(A); *Tamburo*, 601 F.3d at 700. Nationwide service of process is not authorized by the LMRA. *United Elec. Workers v. 163 Pleasant Street*, 960 F.2d 1080, 1086 n.5 (1st Cir. 1992) (stating "[t]he LMRA . . . makes no provision for either nationwide or worldwide service."). Because the Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's due process clause, the state statutory and federal constitutional inquiries merge. *Tamburo*, 601 F.3d at 700. "The key question is therefore whether [a] defendant[] ha[s] sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 700-01 (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In other words, a defendant "must have purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being haled into court' there." *Id.* at 701 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

There are two types of personal jurisdiction, general and specific. The Union argues that the Court has general and specific personal jurisdiction over Tri-State. General jurisdiction arises when a defendant has "continuous and systematic" contacts with a state, even if the action is unrelated to those contacts. *Tamburo*, 601 F.3d at 701 (*quoting Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). "The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Id.* General jurisdiction exists only when the defendant's contacts with the forum state "are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S.Ct. 746, 751 (2014) (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "To support an exercise of specific personal jurisdiction, the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction." *Tamburo*, 601 F.3d at 702. Specific jurisdiction is therefore evaluated by reference to the particular conduct underlying the claims made in the lawsuit. *Id.* "Specific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the proposed forum state." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (emphasis in original).

In determining whether litigation arises out of alleged contacts in a contract case, "only the dealings between the parties in regard to the disputed contract'" are "relevant to minimum contacts analysis." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 717 (7th Cir. 2002). "While an out-of-state party's contract with an in-state party is not enough alone to establish the requisite minimum contacts, 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' may indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Id.* at 716 (*quoting Burger King*, 471 U.S. at 479) (internal citations omitted).

Here, Defendants are Iowa corporations with their principal places of business in the State of Iowa. The Union claims Defendants engaged in the following jurisdictional contacts

with Illinois: registered to do business in Illinois; performed numerous jobs in Illinois pursuant to the CBA, including work at Western Illinois University in Macomb, Illinois, Rock Island Arsenal in Rock Island, Illinois, Friendship Manor in Rock Island, Illinois, and the Jo-Davies County Courthouse in Galena, Illinois; failed to pay fringe benefit contributions to the Carpenters Fringe Benefit Funds (the "Funds") located in Geneva, Illinois; and failed to engage in arbitration proceedings injuring the Chicago Regional Council of Carpenters located in Chicago, Illinois. The Union alleges that it is common practice for Willman to obtain a job contract and then have Tri-State perform the carpentry work on the jobsite. According to the Union, this occurred at the Jo-Davies Courthouse job in Galena, Illinois and at the Rock Island Arsenal in Rock Island, Illinois. The Union also claims that Willman sent numerous payments pursuant to the CBA to the Funds in Galena, Illinois over the past few years.

The amended complaint alleges that Willman and Tri-State are not separate corporate entities and are operated as one in the same. The Union seeks to pierce the corporate veil and hold Tri-State liable for Willman's actions related to the CBA. As to the veil-piercing allegations, the amended complaint alleges that Defendants fail to observe corporate formalities, Defendants commingled tools, equipment, and employees, Willman diverted assets to Tri-State to avoid paying Willman's trust fund obligations to the Union, Defendants share the same owners and officers, and Defendants operate out of adjoining properties. (Doc. 17 at ¶¶ 57-65). For purposes of its motion, Tri-State does not contest the sufficiency of the veil piercing allegations and they are taken as true. *Tamburo*, 601 F.3d at 700. Accordingly, the Court considers not only Tri-State's activities directed toward Illinois, but also the activities of Willman.

The Union has met its burden to demonstrate that Tri-State has sufficient minimum contacts with Illinois to authorize specific personal jurisdiction. First, the terms of the Memorandum of Agreement and CBA expressly contemplate performance by Willman in Illinois. Under the Memorandum of Agreement, Willman agreed to be bound by the Trust Agreements and Area Agreements negotiated between subordinate bodies of the United Brotherhood of

Carpenters & Joiners of America and certain Employer Associations in counties of Illinois and Iowa which make up the geographic jurisdiction of the Union. The geographical area covered by the CBA to which Willman agreed to be bound includes four counties in Illinois (Rock Island, Mercer, Henry, and Henderson) and three counties in Iowa (all of Louisa north of the Iowa River, Muscatine and Scott). Doc. 17-2 at 5, Article 1. Willman's agreement with the Union thus demonstrates its intent to engage in business in Illinois, and both Defendants registered to do business in Illinois. Second, the Memorandum Agreement and CBA anticipated an ongoing relationship with the Union and continuing contacts with Illinois. The CBA at issue was a long term contract involving a term of three years, May 18, 2013 through April 30, 2016. Third, Willman's performance of work pursuant to the CBA occurred in part in Illinois, and Defendants entered Illinois on numerous occasions to perform jobs under the CBA. Those job sites were located at Jo Daviess County Courthouse in Galena, Illinois, Friendship Manor in Rock Island, Illinois, and several projects at the Rock Island Arsenal in Rock Island, Illinois. Fogel Dec. (Doc. 46-4 at ¶ 7). In fact, Willman admits that it "performs a variety of construction work predominately in the Quad Cities area of Illinois and Iowa." (Doc. 23-1 at ¶ 4). Furthermore, since becoming a signatory contractor on March 16, 1993, numerous contributions made pursuant to the CBA were sent by Willman to the Funds in Geneva, Illinois. Fogel Dec. (Doc. 46-4 at ¶¶ 10, 12). Contacts such as these are not "random, fortuitous, or attenuated." *Citadel Group Ltd. v. Washington Regional Medical Center*, 536 F.3d 757, 761 (7th Cir. 2008) (*quoting Burger King Corp.*, 471 U.S. at 475)). These contacts provide more than sufficient bases for exercising personal jurisdiction over Tri-State in regard to this action to compel arbitration based on delinquent wage and benefit contributions for work partly performed in Illinois pursuant to the CBA.

The Union has also shown that there is a nexus between Defendants' contacts with Illinois and this litigation. Here, the parties' primary contract dispute is whether Tri-State is required to arbitrate the Union's wage and fringe benefits grievance. Work in Illinois pursuant to

the CBA is directly relevant to the Union's breach of contract claim, as the alleged breach concerns Tri-State's failure to arbitrate the grievance concerning wages and trust fund contributions owed in part on Illinois projects. As a result, the Union's breach of contract claim arises out of or relates to the contacts that have been found to be sufficient for exercise of specific personal jurisdiction in Illinois.

Likewise, it would not offend traditional notions of fair play and substantial justice for Tri-State to be subject to personal jurisdiction in Illinois. As noted above, Defendants partly performed work covered by the CBA in Illinois and entered Illinois on numerous occasions to perform work under the CBA. Willman knew that it was contracting with a union whose territorial jurisdiction includes counties in Illinois. Further, Willman sent payments to the Funds in Illinois. These facts demonstrate that Defendants purposefully availed themselves of the privilege of conducting business in Illinois. Defendants should have reasonably anticipated being haled into court in Illinois if Plaintiff ever claimed that Defendants had failed to arbitrate a claim of delinquent wage and fringe benefit contributions owed in part on certain Illinois projects incurred pursuant to the CBA. *Burger King*, 471 U.S. at  (stating "the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed."). Finally, Illinois has an interest in resolving contract disputes which involve entities located in Illinois, and Chicago Regional Council of Carpenters is headquartered in Illinois. Under these circumstances, the Court's exercise of jurisdiction over Tri-State comports with traditional notions of fair play and substantial justice. Because the Court finds that specific personal jurisdiction over Tri-State exists, it need not address whether general personal jurisdiction exists.

### 3. Improper Venue

Tri-State next moves to dismiss the amended complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, to transfer the case under 28 U.S.C. §§ 1404(a) and 1406(a) to the Southern District of Iowa. "In deciding a motion to dismiss

for improper venue under Federal Rule of Civil Procedure 12(b)(3), all allegations are taken as true, unless contradicted by the defendant's affidavits and the court may consider facts outside the pleadings." *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F.Supp.3d 870, 875 (N.D. Ill. Feb. 23, 2015). "When a defendant challenges venue, the plaintiff bears the burden of establishing proper venue." *Id.* If venue is improper, the court may either dismiss the case or transfer the case to any district or division in which it could have been brought. 28 U.S.C. § 1406(a).

The Union asserts that venue is proper under the LMRA venue provision, 29 U.S.C. § 185(c), and the general venue statute, 28 U.S.C. § 1391(b)(2). "Since the LMRA has its own venue provision, the LMRA venue provision governs over the general venue statute for purposes of determining venue in this case." *Gilreath v. Plumbers, Pipefitters & Serv. Technicians Local 502*, 2010 WL 6429570, at *3 n.4 (S.D. Ohio Sept. 2, 2011), report and recommendation adopted by 2011 WL 1311875 (S.D. Ohio Apr. 1, 2011). Venue under the LMRA is governed by 29 U.S.C. 185(c). Section 185(c) provides that "district courts shall be deemed to have jurisdiction over a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members." 28 U.S.C. § 185(c). While Section 185(c) uses the term "jurisdiction," many courts have recognized that it is actually a venue provision. *D5 Ironworks, Inc. v. Local 395 Ironworkers*, 2016 WL 2733307, at *2 (N.D. Ill. May 11, 2016); *Gilreath*, 2010 WL 6429570 at *3 (noting "[i]n the statute, 29 U.S.C. § 185(c) is labeled 'jurisdiction,' while 29 U.S.C. § 185(a) is labeled 'venue.' However, courts agree that despite their labels, § 185(c) is in fact the venue provision while § 185(a) defines the bounds of jurisdiction."); *Reed v. Int'l Union of United Auto., Aerospace & Agr. Implement Workers of Am.*, 945 F.2d 198, 201 n.3 (7th Cir. 1991) (stating "[d]espite its terms, the section has been held to deal with venue and not with jurisdiction."). In this case, venue is proper in this District under the venue provision of the LMRA. Plaintiff Chicago Regional Council of

Carpenters is headquartered in Chicago, Illinois and it is engaged in representing and acting for carpenters throughout the Northern District of Illinois.

### 4. Transfer

Finally, Tri-State argues that the Court should transfer this action to the Southern District of Iowa. Tri-State asserts that transfer is appropriate because both Defendants are located in the Southern District of Iowa and the allegations of wrongdoing occurred in the Southern District of Iowa. "A federal district court, in which a suit is filed with proper venue, may '[f]or the convenience of the parties and witnesses, in the interest of justice … transfer any civil action to any other district or division where it might have been brought.'" *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) (*quoting* 28 U.S.C. § 1404(a)). Under 28 U.S.C. § 1404(a), transfer "is appropriate if: (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice." *Curtis v. Wheaton Franciscan Services, Inc.*, 2016 WL 6432579, at *4 (N.D. Ill. Oct. 31, 2016). The party moving for the transfer bears '"the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey*, 796 F.2d at 219-20. "The weighing of factors for and against transfer … is committed to the sound discretion of the trial judge." *Id.* at 219.

Considering the relevant factors, the facts of this case do not justify transfer. The Union does not dispute that venue is proper in both the Northern District of Illinois and the Southern District of Iowa, so only the convenience factors and interest of justice factors will be considered. "In considering the convenience of one venue over another, courts consider five factors: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Body Science LLC v. Boston Scientific Corp.*, 846 F.Supp.2d 980, 992 (N.D. Ill. 2012) (*citing Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010)).

The first factor, the plaintiff's choice of forum, favors the Union. A plaintiff's choice of forum is generally given considerable deference if that is where the plaintiff resides. *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003) (stating "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.") (*quoting Gulf Oil Corp. v. Gilbert*, 330 US. 501, 508 (1947)). The Union's choice of forum in the Northern District of Illinois weighs heavily against transfer because Chicago Regional Council of Carpenters' principal headquarters is located in this District.

The second factor, the situs of material events, is neutral. In breach of contract cases, the situs of material events "is where the business decisions leading up to and causing the breach occurred" and often includes "the location of performance or non-performance under the contract." *Roberts & Schaefer Co. v. Clyde Bergemann Delta Ducon, Inc.*, 2015 WL 1911108, at *6 (N.D. Ill. April. 27, 2015) (*quoting Continental Cas. Co. v. Staffing Concepts, Inc.*, 2009 WL 3055374, at *4 (N.D. Ill. Sept. 18, 2009)). Here, both venues have material relationships to the events. The business decisions to allegedly breach the CBA were made in Davenport, Iowa where Defendants' principal offices are located. Illinois is also the site of material events relating to the performance of the CBA because some of the contributions that are owed the Funds are based upon Defendants' work performed in Illinois. Thus, the situs of material events does not favor either party.

The relative ease of access to sources of proof, the third factor, is neutral. The Union argues that there is greater access to sources of proof in this District because Chicago Regional Council of Carpenters is headquartered in Chicago. However, the physical location of documentary evidence has become less important in recent years. "With the advent of electronic discovery, where records are actually stored is less of a factor because documents now are easily scanned, stored, and electronically transmitted and moving them no longer creates the onerous burden it may once have imposed." *Camarena v. Vanderbilt Mortg. & Fin.,*

*Inc.*, 2015 WL 4036258, at *3 (N.D. Ill. July 1, 2015). Consequently, the location of the sources of proof does not weigh in either party's favor.

The fourth factor, the convenience of the witnesses, is neutral. "The convenience of witnesses is often viewed as the most important factor in the transfer balance." *Schwarz v. National Van Lines, Inc.*, 317 F.Supp.2d 829, 836 (N.D. Ill. Feb. 24, 2004). However, "[t]he convenience of employee witnesses typically is not given significant weight." *Rosman Adjustment Corp. v. Bernay*, 2013 WL 453197, at *3 (N.D. Ill. Feb. 3, 2013); *Aon plc v. Heffernan*, 2017 WL 478270, at *4 (N.D. Ill. Feb. 6, 2017) (stating "[t]he convenience of employee witnesses is less important in a transfer analysis since party witnesses normally must appear voluntarily."). As the moving party, Tri-State "must identify the key witnesses to be called and provide basic information about their anticipated testimony." *Id.* Tri-State has not identified any non-party witnesses nor discussed which forum would be more convenient for them. Because Tri-State has provided no information for the Court to determine whether transfer would be convenient to the witnesses, the Court cannot conclude that the convenience of the witnesses favors the Southern District of Iowa over this District. *Rosen v. Spirit Airlines, Inc.*, 2015 WL 3798150, at *4 (N.D. Ill. June 17, 2015) (holding the moving party must "provide specific information about the witness testimony.").

The last factor, the convenience of the parties, weighs against transfer. Neither forum would avoid imposing inconvenience on the parties. The Southern District of Iowa is more convenient for Tri-State as it is headquartered in Davenport, Iowa. However, this Court regularly uses telephone conferencing to avoid the cost of travel for attorneys, and Defendants has thus far appeared at all status and motion hearings in this case via telephone. This District is more convenient for the Union because Chicago Regional Council of Carpenters is headquartered in Chicago. In such case, "the tie is awarded to the plaintiff[.]" *In re National Presto Industries, Inc.*, 347 F.3d 662, 665 (7th Cir. 2003) ("When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the

inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff[.]").  Transferring this case to Iowa is more convenient for Tri-State but that would merely shift the inconvenience from one party to the other.  *Research Automation, Inc.*, 626 F.3d at 978 (holding "[w]here the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer.").

The Court next considers the interest of justice factors.  Whether transfer would serve the interest of justice requires consideration of public-interest factors such as "docket congestions and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to controversy."  *Research Automation, Inc.*, 626 F.3d at 978 (citations omitted).  "The 'interest of justice' analysis relates [] to the efficient functioning of the courts, not to the merits of the underlying dispute."  *Coffey*, 796 F.2d at 221.

The first factor, the expected speed of the case to resolution, weighs slightly in favor of denying transfer.  As of September 30, 2016, the median time from filing to disposition for civil cases in the Northern District of Illinois was 7.3 months, compared to 10.0 months in the Southern District of Iowa.  *See* Federal Court Management Statistics – Comparison Within Circuit, September 30, 2016, available at: http://www.uscourts.gov/statistics-report/federal-court-management-statistics-september-2016.  The next factor, each court's relative familiarity with the relevant law, is neutral.  Both this Court and the Southern District of Iowa are equipped to decide this case because the LMRA is a question of federal law.  The final factors—the respective desirability of resolving controversies in each locale and the relationship of each community to the controversy—are also neutral.  Both districts have an interest in the controversy.

Tri-State has failed to show that the private and public interests strongly favor transferring this case to the Southern District of Iowa. Therefore, Tri-State's motion to transfer is denied.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, Defendants' motion to dismiss for lack of jurisdiction and for improper venue or, in the alternative, to transfer venue to the United States District Court for the Southern District of Iowa [23] is denied as to Tri-State and is denied without prejudice to refiling when the stay is lifted as to Willman, if it so chooses. This case is set for a status hearing on April 13, 2017 at 9:30 a.m.


_____
**Daniel G. Martin**
**United States Magistrate Judge**


**Dated: March 22, 2017**